IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BLANCA ZAMORA, | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | |
| | : | NO. 20-1897 |
| v. | : | |
| | : | |
| COMMISSIONER OF SOCIAL SECURITY, | : | |
| | : | |
| Defendant. | : | |

**MEMORANDUM OPINION**

Blanca Zamora ("Zamora" or "Plaintiff") seeks review, pursuant to 42 U.S.C. § 405(g), of the Commissioner of Social Security's ("Commissioner") decision denying her claims for disability insurance benefits ("DIB") pursuant to Title II of the Social Security Act (the "Act") and for Supplemental Security Income ("SSI") pursuant to Title XVI of the Act.[1]  For the reasons discussed below, Zamora's Request for Review will be denied.

**I.      FACTUAL AND PROCEDURAL BACKGROUND**

Zamora was born on September 22, 1961.  R. at 23.[2]  She has a limited education and is able to communicate in English.  Id.  Zamora's past relevant work experience entailed a composite job of a cafeteria attendant and cook helper; a composite job of a sandwich maker and cashier/checker; fast-food worker; and cashier/checker.  Id. at 22.  She protectively applied for DIB and SSI on May 2, 2017, alleging that she became disabled on January 12, 2017 due to the

---

[1]     In accordance with 28 U.S.C. § 636(c), the parties voluntarily consented to have the undersigned United States Magistrate Judge conduct proceedings in this case, including the entry of final judgment.  See Doc. Nos. 3, 6.

[2]     Citations to the administrative record will be indicated by "R." followed by the page number.

following conditions: arthritis, fibromyalgia, back issues, memory loss, right foot damage due to previous car accidents, anxiety, depression, and high blood pressure. Id. at 14, 67-68. Zamora's applications were initially denied on August 22, 2017. Id. at 14. She filed a written request for a hearing on September 28, 2017. Id. An Administrative Law Judge ("ALJ") held a hearing on her claim on October 1, 2018. Id. On January 3, 2019, the ALJ issued an opinion denying Zamora's claims. Id. at 11-28. Zamora filed an appeal with the Appeals Council, which was denied on March 10, 2020, thereby affirming the decision of the ALJ as the final decision of the Commissioner. Id. at 1-6. Zamora then commenced this action in federal court.

## II. THE ALJ'S DECISION

In his decision, the ALJ found that Zamora had the following severe impairments: degenerative joint disease of the lumbar spine, degenerative joint disease of the right foot, depressive disorder, anxiety disorder, and obesity. Id. at 17. The ALJ also found that Zamora suffered from sprains of the right and left foot, but that these were non-severe medical impairments. Id. The ALJ determined that none of Zamora's impairments, nor the combination of her impairments, met or medically equaled a listed impairment. Id. at 17-18. The ALJ found that Zamora had the residual functional capacity ("RFC") to perform:

> [M]edium work as defined in 20 CFR 404.1567(c) and 416.967(c) except she could only perform simple, routine, repetitive tasks; no climbing ladders or scaffolds; can frequently perform all other postural activities[.]

Id. at 18. Relying on the testimony of the vocational expert ("VE") who appeared at the hearing, the ALJ determined that Zamora was capable of performing the following occupations: laundry laborer, conveyor feeder, and package sealer machine tender. Id. at 23. Accordingly, the ALJ found that Zamora was not disabled and denied her claim. Id. at 24.

**III.     ZAMORA'S REQUEST FOR REVIEW**

In her Request for Review, Zamora asserts that the ALJ failed to properly assess her RFC and that the administrative record provides a sufficient basis for an award of benefits.

**IV.     SOCIAL SECURITY STANDARD OF REVIEW**

The role of the court in reviewing an administrative decision denying benefits in a Social Security matter is to uphold any factual determination made by the ALJ that is supported by "substantial evidence."  42 U.S.C. § 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Doak v. Heckler, 790 F.2d 26, 28 (3d Cir. 1986); Newhouse v. Heckler, 753 F.2d 283, 285 (3d Cir. 1985).  A reviewing court may not undertake a de novo review of the Commissioner's decision in order to reweigh the evidence.  Monsour Med. Ctr. v. Heckler, 806 F.2d 1185, 1190 (3d Cir. 1986).  The court's scope of review is "limited to determining whether the Commissioner applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the Commissioner's finding of fact."  Schwartz v. Halter, 134 F. Supp. 2d 640, 647 (E.D. Pa. 2001).

Substantial evidence is a deferential standard of review.  See Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004).  Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999) (quoting Pierce v. Underwood, 487 U.S. 552, 564-65 (1988)); Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987).  It is "more than a mere scintilla but may be somewhat less than a preponderance of the evidence."  Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005).  The court's review is plenary as to the ALJ's application of legal standards.  Krysztoforski v. Chater, 55 F.3d 857, 858 (3d Cir. 1995).

To prove disability, a claimant must demonstrate some medically determinable basis for a physical or mental impairment that prevents him or her from engaging in any substantial gainful activity for a 12-month period. 42 U.S.C. § 1382c(a)(3)(A); accord id. § 423(d)(1). As explained in the applicable agency regulation, each case is evaluated by the Commissioner according to a five-step sequential analysis:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirements in § 416.909, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled. (iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. (v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. § 416.920 (references to other regulations omitted).

## V. DISCUSSION

### A. The ALJ Properly Considered the Cumulative Effect of Zamora's Impairments in His Disability Determination

Zamora argues that the ALJ failed to properly assess her RFC by not taking into account the combined effects of all of her medically determinable impairments. Pl.'s Br. (Doc. No. 13) at 10-16. This claim lacks merit.

An individual's RFC refers to the most a claimant can still do despite his or her limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a). The assessment must be based upon all the relevant evidence, including medical records, medical source opinions, and the individual's

4

subjective allegations and descriptions of his or her own limitations. Id. §§ 404.1545(a)(3), 416.945(a)(3). Pursuant to SSR 96-8p, an RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments, including the impact of any related symptoms. SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The ALJ is required to consider the impact of both severe and non-severe impairments when assessing a claimant's RFC. See id. at *5. However, an ALJ must convey only a claimant's "credibly established limitations" in his or her RFC assessment. Rutherford, 399 F.3d at 554. Ultimately, the issue for this Court on review is not how it would weigh the evidence de novo, but only whether the evidence is such as "a reasonable mind might accept as adequate to support [the] conclusion" that the ALJ reached. Hartranft, 181 F.3d at 360.

The ALJ's decision shows that, throughout the sequential analysis, he considered the cumulative effect of Zamora's impairments. Specifically, at step two of the sequential evaluation, the ALJ determined that Zamora had the following severe impairments: degenerative joint disease of lumbar spine, degenerative joint disease of right foot, depressive disorder, anxiety disorder, and obesity. R. at 17. He also found that Zamora's sprains of her right and left feet were non-severe impairments, while her alleged fibromyalgia was a non-medically determinable impairment because the record lacked the necessary clinical findings to establish that diagnosis. Id. At step three of the sequential evaluation, the ALJ determined that Zamora did not have "an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments."[3] Id. Next, the ALJ found that Zamora had the RFC to

---

3   To the extent that Zamora challenges the ALJ's finding at step three that the ALJ failed to properly consider the combination of her impairments in determining whether or not they met or medically equaled the severity of one of the listed impairments, that argument fails. The ALJ

(Footnote continued on next page)

perform "medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except she could only perform simple, routine, repetitive tasks; no climbing ladders or scaffolds; can frequently perform all other postural activities[.]" Id. at 18. In making this finding, the ALJ included all of Zamora's credibly established functional limitations in his RFC determination and his decision was supported by substantial evidence.

With respect to Zamora's mental health impairments, the ALJ summarized that Zamora sought outpatient mental health treatment during which it was noted that she experienced depressive symptoms, had difficulties sleeping, and sometimes appeared anxious and depressed. Id. at 20 (citing id. at 293-328). However, Zamora's mental status examinations were routinely within normal limits. Id. Throughout her outpatient mental treatment, Zamora was consistently evaluated to be oriented times three with appropriate mood and affect; able to articulate well within normal speech and language, rate, volume and coherence; have normal thought content with ability to perform basic computations and apply abstract reasoning; have intact associations with no evidence of hallucinations, delusions, obsessions, or homicidal or suicidal ideation; demonstrate appropriate judgment and insight; display ability to recall recent and remote events; and have an intact fund of knowledge and normal attention span and ability to concentrate. See, e.g., id. at 293, 295, 330, 333, 384, 386, 389, 392, 395, 399, 400, 402, 405, 409, 412, 415, 418, 472, 478. She was diagnosed with major depression; anxiety; opioid use disorder, severe

---

explicitly indicated that he was considering the impairments singly and in combination, R. at 17, and there is "no reason not to believe" that the ALJ did so, Morrison ex rel. Morrison v. Comm'r of Soc. Sec., 268 F. App'x 186, 189 (3d Cir. 2008); see also Ollie v. Comm'r of Soc. Sec., No. 13-03297, 2014 WL 1272180, at *6 (D.N.J. Mar. 26, 2014) ("An ALJ fulfills [his or] her duty to consider a claimant's impairments in combination with one another if the ALJ explicitly indicates that [he or] she has done so, and there is 'no reason to not believe [him or] her.'" (quoting Morrison, 268 F. App'x at 189)).

dependence; and insomnia. See id. at 294, 296, 378-80. Her treatment included suboxone therapy, psychotherapy, and psychotropic medication. See, e.g., id. at 377-417.

Zamora received a psychological consultative examination on July 21, 2017, by Christopher Patrone, Psy.D. Id. at 345-53. Dr. Patrone reported that her demeanor and responsiveness to questions were cooperative and that her manner of relating, social skills, and overall presentation was adequate. Id. at 347. Her mode of dress was appropriate and her personal hygiene and grooming were satisfactory. Id. Her speech intelligibility was fluent, her quality of voice clear, and her expressive and receptive language was adequate. Id. at 348. Her thought process was coherent and goal directed with no evidence of hallucinations, delusions, or paranoia in the evaluation setting. Id. Moreover, her affect was full range and appropriate to speech and thought content. Id. Zamora reported feeling "happy" at her consultative examination. Id. Her attention and concentration were impaired due to educational deficits and emotional distress related to depression, and her recent and remote memory skills were mildly impaired due to emotional distress secondary to depression and educational deficits. Id. Her cognitive functioning was average and her insight and judgment were fair. Id. Dr. Patrone diagnosed her with unspecified depressive disorder, unspecified anxiety disorder, and substance use disorder. Id. at 349. Her prognosis was rated as fair if she remained in her current treatment. Id. Dr. Patrone completed a Medical Source Statement of Ability To Do Work-Related Activities (Mental), in which he opined that she had no limitations in her ability to understand, remember, and carry out simple instructions; mild limitations in her ability to make judgments on simple work-related decisions; and moderate limitations in her ability to understand, remember, and carry out complex instructions. Id. at 351. He also opined that she had moderate limitations in her ability to interact appropriately with the public, supervisors, and coworkers. Id.

at 352.  The ALJ gave Dr. Patrone's opinion that Zamora had "no more than moderate limitations . . . significant weight," explaining that "there is no evidence of cognitive, emotional or behavioral deficits so extreme as to preclude simple, unskilled work." Id. at 22.

Likewise, with respect to her physical impairments, treatment notes once again demonstrated consistently normal findings, despite complaints of back and foot pain. Id. at 330, 333, 336, 339.  During monthly medication refill appointments from a provider in Florida during 2015 and 2016, Zamora was assessed as having chronic pain syndrome, anemia, and obesity. Id. at 279-287.  However, during these appointments, she was listed as having no current pain, stable on medications, and even described herself as "doing fantastic." See id. at 279, 280, 283. Zamora once again sought treatment for her pain on September 14, 2017, from Wes Prokop, M.D., an anesthesiologist and pain management specialist, where it was noted that she had chronic low back pain with bilateral radiculopathy. Id. at 510.  After an examination found pain, tenderness, and decreased range of motion, Dr. Prokop treated Zamora with a sacral transforaminal steroid injection. Id. at 510-12.  Approximately six months later, Zamora sought treatment for right foot pain resulting from a prior slip and fall two months prior. Id. at 503. Zamora was diagnosed with primary osteoarthritis of the right ankle and foot, pain in right foot, hallux valgus (acquired), right foot, and was provided a CAM walker to use. Id. at 505. In addition to her foot and back pain, the ALJ also noted diagnoses of chronic pain syndrome, obesity, iron deficiency, anemia, insomnia in the record. Id. at 19.

Ultimately, in formulating Zamora's RFC, the ALJ thoroughly reviewed Zamora's testimony, treatment notes, and opinion evidence in the record, concluding that:

> With regard to her physical impairment, [Zamora] has not had surgery, been a surgical candidate, had an inpatient hospitalization, nor had an emergency room visit.  Her treatment has been conservative in nature, including using a CAM walker, receiving an injection, and taking medication.  There is no evidence of

>disc herniation, nerve root impingement, or any significant neurological deficits. There is no record of an MRI or EMG being done. In fact, there are very few findings on physical examinations that would support a claim for disability. When seen for a consultative examination, she displayed a normal gait and good mobility. She required no assistive device and needed no assistance getting on and off the examining table. Her motor strength was normal. There have been no signs of muscular atrophy, indicative that she has been able to move around in a fairly normal manner. With regard to her mental impairments, the claimant has not had an inpatient psychiatric hospitalization, partial hospitalization, been admitted to a day program, nor had an emergency room visit. Her treatment has been conservative in nature, consisting of psychotherapy and psychotropic medication. [Zamora] has been fully oriented with no psychotic symptoms nor suicidal/homicidal ideation. There is no evidence of record that she has experienced any significant side effects of medication. There is no Medical Source Statement in the record from any treating source, either physical or mental. Despite [] alleging a debilitated lifestyle, [Zamora] has been able to take care of her personal needs without assistance and do household chores, including cooking, cleaning, and doing laundry. She has been able to use public transportation, shop in stores for groceries, and manage her own finances. She has been able to socialize with a neighbor and with friends on the telephone, listen to music, and watch television programs.

Id. at 21-22.

Zamora challenges this determination, arguing that it did not properly account for a variety of her alleged impairments, including bilateral knee conditions, seizure disorder, eye vitreous detachment, high blood pressure, chronic pain syndrome, anemia, insomnia, gastro reflux disease, use of a cane, or bilateral radiculopathy. Pl.'s Br. at 12-14. A diagnosis alone, however, does not demonstrate disability. See Foley v. Comm'r of Soc. Sec., 349 F. App'x 805, 808 (3d Cir. 2009), and Zamora fails to identify evidence in the record that her conditions or impairments required limitations greater than what the ALJ included in her RFC.[4] See, e.g.,

---

[4] For example, Zamora cites to her gastro reflux disease, Pl.'s Br. at 13, but her medical treatment notes indicate that "[t]he severity of the problem is mild," R. at 338. Likewise, her hypertension was listed as "stable," id. at 331. Although Zamora indicated she used a cane, Pl.'s Br. at 13, the medical records did not contain any indication that a cane or walker was ever prescribed aside from the brief use of a CAM walker boot. See R. at 497-98.

Phillips v. Barnhart, 91 F. App'x 775, 780 (3d Cir. 2004) ("[The claimant's] argument incorrectly focuses on the diagnosis of an impairment rather than the functional limitations that result from that impairment.  A diagnosis of impairment, by itself, does not establish entitlements to benefits under the Act.").  In determining a claimant's RFC, the ALJ is only required to include credibly-established limitations and not every limitation alleged.  Rutherford, 399 F.3d at 554.  It is the claimant's burden to "prove [his or] her medical condition and [the resulting] functional limitations."  Esposito v. Apfel, No. 99-771, 2000 WL 218119, at *4 (E.D. Pa. Feb. 24, 2000) (citing Diaz v. Shalala, 59 F.3d 307, 315 (2d Cir. 1995); Torres v. Schweiker, 682 F.2d 109, 111 (3d Cir. 1982)); see also Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987) (claimant bears the burden of proof at steps one through four of the sequential analysis).  Here, Zamora fails to establish that any of the conditions listed above resulted in additional restrictions to her RFC.  Contrary to Zamora's contention, the ALJ considered the combination of Zamora's impairments in assessing her RFC, and substantial evidence supports the ALJ's RFC determination.

### B. The ALJ's Determination that Zamora Was Capable of Performing Medium Work is Supported by Substantial Evidence

Zamora also contends that the ALJ's determination that she was capable of performing medium work[5] was not supported by substantial evidence.  This argument is unavailing.

In assessing Zamora's physical RFC, the ALJ noted that there was no Medical Source Statement in the record from any treating source with respect to her physical capabilities.  R. at 22.  The ALJ, however, afforded "great weight" to the opinion of State agency consultant Hong

---

[5]  "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds."  20 C.F.R. §§ 404.1567(c), 416.967(c).

10

S. Park, M.D, who "opined that [Zamora] can do work at the medium exertional level." Id. The ALJ found that Dr. Park's opinion was consistent with the medical evidence of record and not contradicted by any other medical opinion. Id. In addition, the ALJ afforded the opinion of the internal medicine consultative examiner, Abaid Choudry, M.D., partial weight, finding that Zamora's restrictions were in fact even more restrictive than what Dr. Choudry assessed. Id. Dr. Choudry conducted a physical consultative examination on August 8, 2017. Id. at 361-74. Dr. Choudry reported that Zamora had a history of low back pain since 2008, which she described as "pretty severe," as well as high blood pressure, seizure disorder, and psychiatric issues. Id. at 361. However, she was not currently on any medications. Id. Dr. Choudry noted that Zamora appeared to be in no acute distress, her gait was normal, her squat was 50 percent full, her stance was normal, she used no assistive devices, needed no help changing for the exam or getting on and off the exam table, and was able to rise from her chair without difficulty. Id. Dr. Choudry determined that she had no scoliosis, kyphosis, or abnormality in the thoracic spine. Id. at 363. Her straight leg raises were negative bilaterally both seated and supine. Id. She had a prominent bony protrusion in the dorsum of her right foot, but no evidence of joint deformities and no redness, heat, or effusion. Id. With respect to her extremities, she had no cyanosis, clubbing, or edema; no significant varicosities or trophic changes; and no muscle atrophy was evident. Id. Dr. Chaudry's examination also included an x-ray of her right foot, which demonstrated no evidence of acute fracture, dislocation, or destructive bony lesion, but did reveal moderate joint space narrowing and osteophyte formation. Id. at 373. An x-ray of her lumbosacral spine revealed mild degenerative spondylosis, but no lumbar compression fracture. Id. at 374. Dr. Choudry diagnosed Zamora with chronic low back pain, bilateral knee pain, high blood pressure,

seizure disorder, and "[s]ome type of psychiatric condition." Id. at 363-64. Her prognosis was listed as fair. Id. at 364.

Dr. Choudry completed a Medical Source Statement of Ability To Do Work-Related Activities (Physical), in which he opined that Zamora was frequently able to lift and carry up to 20 pounds, and was occasionally able to lift and carry up to 100 pounds. Id. at 365. He also found that she was able to sit four hours, stand three hours, and walk two hours at one time without interruption during an eight-hour workday, and that she could sit six hours, stand five hours, and walk four hours total in a workday. Id. at 366. Dr. Choudry determined that Zamora did not require the use of a cane to ambulate. Id. Dr. Choudry also opined that Zamora could occasionally reach overhead with her right hand, but could frequently reach overhead with her left hand, and could frequently handle, finger, feel, push and pull with both hands. Id. at 367. She could occasionally climb ladders or scaffolds, and could frequently climb stairs and ramps, balance, stoop, kneel, crouch, and crawl. Id. at 368. Finally, he found that she could perform activities like shopping; travel without a companion for assistance; ambulate without using a wheelchair, walker, or two canes or crutches; walk a block at a reasonable pace on rough or uneven surfaces; use standard public transportation; climb a few steps at a reasonable pace with the use of a single hand rail; prepare simple meals; care for her personal hygiene; and sort, handle and use paper or files. Id. at 370. The ALJ gave Dr. Choudry's opinion "partial weight to the extent it agrees with the [RFC]," but found Zamora "to be slightly more restricted in the heaviest weight she can lift and carry." Id. at 22.

The ALJ's reliance on these opinions in determining that Zamora was capable of medium work is further supported by the treatment notes, discussed supra in Section V.A, which routinely noted that Zamora maintained a normal posture and gait, despite complaints of back

12

and foot pain.  See, e.g., id. at 384, 386, 392, 399, 402, 405, 409, 418, 424, 430, 434, 436, 450, 455, 459, 472, 478, 492.  In addition, her activities of daily living involved cooking, cleaning, laundry, shopping, and self-care.  See, e.g., id. at 21-22, 361.

To the extent that the ALJ's physical RFC assessment differed from Zamora's subjective statements about her symptoms, the ALJ adequately discussed his reasoning for not including them into Zamora's physical RFC.  Although the ALJ found that Zamora's "medically determinable impairments *could* reasonably be expected to cause the alleged symptoms," he did not credit them because her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record."  Id. at 21 (emphasis added).  Substantial evidence supports this determination because, as the ALJ noted, Zamora:

> Has not had surgery, been a surgical candidate, had an inpatient hospitalization, nor had an emergency room visit.  Her treatment has been conservative in nature, including using a CAM walker, receiving an injection, and taking medication.  There is no evidence of disc herniation, nerve root impingement, or any significant neurological deficits.  There is no record of an MRI or EMG being done.  In fact, there are very few findings on physical examinations that would support a claim for disability.

Id.

Moreover, despite Zamora's argument that, if she was limited to light work as opposed to medium work, she would grid out under the Medical-Vocational Guidelines, see Pl.'s Br. at 15-16, the ALJ's decision to limit Zamora to medium work was amply supported by evidence in the record.  Based on this RFC assessment and Zamora's age, education, and work experience, the VE who testified at the hearing concluded that there were jobs that existed in the national economy in significant numbers that Zamora could perform.  R. at 58-59.  Accordingly, Zamora's argument that, had she been limited to something less than medium work, she would be considered disabled under the Medical-Vocational Guidelines, necessarily fails and the ALJ's

13

RFC's determination that Zamora was capable of medium work was supported by substantial evidence in the record. See Salerno v. Comm'r of Soc. Sec., 152 F. App'x 208, 209-10 (3d Cir. 2005); Hudson v. Comm'r of Soc. Sec., 93 F. App'x 428, 431 (3d Cir. 2004).[6]

## VI.     CONCLUSION

For the reasons set forth above, I find that the ALJ's decision is supported by substantial evidence. Accordingly, Plaintiff's Request for Review is denied. An appropriate order follows.

Dated: January 28, 2021

BY THE COURT:

*/s/ Marilyn Heffley*
MARILYN HEFFLEY
UNITED STATES MAGISTRATE JUDGE

---

[6] Zamora also argues that she is entitled to an award of benefits. Pl.'s Br. at 17-18. An award of benefits only is appropriate "when no evidentiary questions remain and the outcome of the case is dictated as a legal matter." Mongale v. Astrue, No. 06-CV-3911, 2007 WL 2571453, at *4 (E.D. Pa. Aug. 24, 2007). In this case, because the ALJ's decision was supported by substantial evidence, Zamora's request for an award of benefits necessarily fails.